The STATE of Ohio, Appellee,

v.

NASRALLAH, Appellant.

[Cite as *State v. Nasrallah* (2000), 139 Ohio App.3d 722.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–99–1194.

Decided Sept. 1, 2000.

*Julia R. Bates,* Lucas County Prosecuting Attorney, and *Thomas A. Matuszak,* Assistant Prosecuting Attorney, for appellee.

*David S. Steingold* and *James C. MacHarg,* for appellant.

*Betty D. Montgomery,* Attorney General, and *David V. Patton,* Assistant Attorney General, urging affirmance for *amicus curiae* the Attorney General of Ohio.

*David P. Muhek,* urging affirmance for *amicus curiae* Ohio Prosecuting Attorneys Association.

SHERCK, Judge.

This is an appeal from a sentencing order issued by the Lucas County Court of Common Pleas in a pattern of corrupt activities case. Because we conclude that the six-year prison term and $5.1 million fine imposed upon appellant did not constitute an abuse of discretion and was in conformity with the law, we affirm.

On November 18, 1998, an off-duty police officer working security in a Toledo department store arrested a New York woman for attempting to purchase merchandise with a counterfeit credit card. The officer notified agents of the United States Secret Service, who identified the credit card the woman used as one of more than ten thousand card blanks that had been stolen from a Nebraska bank nearly two years earlier. The number of the Visa account on the card used in Toledo had been issued by the National Bank of New Zealand to one Trevor Banks of Christchurch.

The arrest of the Toledo credit card "shopper" put into play a sequence of events that eventually unraveled a credit card fraud ring that had been operating in seventeen states and two Canadian provinces. Seemingly at the center of this operation was a thirty-three-year-old Lebanese national living in Dearborn, Michigan—appellant, Ali Abdul Hassan Nasrallah.

Much of the information on this enterprise comes from Jose Diaz, the self-described leader of the "shopper" crew to which the woman arrested in Toledo belonged. Jose Diaz was arrested on a Wisconsin theft warrant when he appeared to post bond for the jailed Toledo "shopper." According to Diaz, appellant approached him in 1994 in New York City with an offer to provide fraudulent credit cards and counterfeit identification to match. Diaz was to recruit "shoppers" to use the cards to purchase expensive electronic equipment that would be given to appellant. In return, the shopping crew would be paid five percent of the purchase price. In time, the organization began to focus solely upon the purchase of laptop computers and expanded outside the borders of New York.

Eventually, appellant moved the operation to Florida and then to Michigan. Even so, Diaz continued to recruit shoppers from the New York Hispanic community. Additional crews were recruited from the Detroit–Dearborn Arabic community.

According to Diaz, appellant would travel from Detroit to Toledo to deliver the counterfeit credit cards, a list of the laptop computers to be purchased, and an itinerary with the locations of large retailers that sold the goods. Once the computers were purchased, they were shipped to one of several addresses in the Detroit–Dearborn area.

Using the Diaz information, authorities obtained a search warrant for appellant's Dearborn home. However, before they executed the warrant, appellant fled. He was arrested in Toledo. When agents searched appellant's residence, they found documentary evidence linking him to the shopping scheme and a list of thirteen hundred credit card account numbers issued by banks around the world.

Appellant eventually pled guilty to a five-count bill of information. That bill of information charged one count of engaging in a pattern of corrupt activity, Ohio's little RICO[1] statute, R.C. 2923.32(A)(1); two counts of money laundering, R.C. 1315.55(A)(3); and two counts of receiving stolen property, R.C. 2913.51. The court accepted appellant's guilty plea, then held an extensive sentencing hearing. At this hearing, a United States Secret Service agent testified that, although the loss from credit cards found in Ohio amounted to only $1,600, the total identifiable amount taken worldwide by the enterprise was $1.7 million.

Ultimately, the court sentenced appellant to a six-year term of imprisonment for the state RICO violation and concurrent lesser sentences for the other counts.[2] Pursuant to R.C. 2923.32(B)(2)(a), the court fined appellant $5.1 million, treble the total identifiable loss attributable to the criminal conspiracy.

Appellant now appeals this sentence, setting forth the following single assignment of error:

"The trial court erred when it abused its discretion in sentencing defendant/appellant when it imposed a sentence that was excessive in light of the facts on the record in this case, the sentence included a prison term which was in the mid-range of the guidelines even though defendant/appellant is a first-time offender, the sentence was imposed for multiple offenses arising from a single scheme or plan, and the court did not follow the requirements of ORC Sec. 2929.14(B) or (C) in imposing its sentence."

By leave of court, briefs *amicus curiae* in favor of affirmance have been submitted by the Attorney General of Ohio and the Ohio Prosecuting Attorneys Association.

---

1. "RICO" refers to the federal Racketeer Influenced and Corrupt Organization Act, Section 1961 *et seq.*, Title 18, U.S.Code, after which the statutes of Ohio and many other states were patterned. Even though Ohio's statute is substantially broader than the federal law, it is nonetheless referred to as a "little" RICO law.

2. The court noted that it was cognizant of press allegations that the gains from this criminal enterprise were funneled to the Middle East terrorist organization, Hazbollah, but specifically noted that no evidence of this connection had been introduced. Therefore, the allegation was not taken into account for sentencing purposes.

As we noted in *State v. Cooks* (1997), 125 Ohio App.3d 116, 118, 707 N.E.2d 1176, 1177:

"R.C. 2929.11 defines the overarching policy considerations underlying felony sentencing in this state. The statute specifically states:

" '(A) * * * The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. * * *

" '(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * * commensurate with and not demeaning to the seriousness of the offender's conduct * * *.'

"R.C. 2929.12 makes clear that, unless a prison term is statutorily mandated, the implementation of the principles set forth in R.C. 2929.11 rests in the sound discretion of the court. The statute also sets forth a number of factors which the court is directed to consider in the exercise of that discretion. R.C. 2929.12(B) through (E)."

The principal offense of which appellant was convicted, R.C. 2923.32(A)(1), is a first-degree felony, see R.C. 2923.32(B)(1), R.C. 1315.55(A)(3), and R.C. 1315.99(C), which carries with it a presumption that a term of imprisonment will be imposed. R.C. 2929.14(A)(1) sets the range for prison terms that may be imposed on a first-degree felony conviction as between three and ten years. R.C. 2929.14(B) directs that an offender sentenced to imprisonment for the first time shall be sentenced to the shortest term authorized unless the court finds that such a sentence would "demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender or others."

A sentencing court must exercise its discretion after considering the R.C. 2929.12 factors to determine whether an offender's conduct is so grievous that a minimal sentence would demean its seriousness and, ultimately, whether the sentencing principles and purposes articulated in R.C. 2929.11 are served by the sentence imposed. On appeal, the conclusion of the sentencing court will not be disturbed absent an abuse of that discretion. *Cooks,* 125 Ohio App.3d at 120, 707 N.E.2d at 1178. "An abuse of discretion is more than an error of law or of judgment, the term connotes that the court's attitude is arbitrary, unreasonable, or unconscionable." *Id.,* citing *State v. Long* (1978), 53 Ohio St.2d 91, 98, 7 O.O.3d 178, 182, 372 N.E.2d 804, 808.

In this matter, appellant, as a first offender, has never before been sentenced to imprisonment. Nevertheless, the sentencing court found that the imposition of the shortest prison term would demean the seriousness of the offense and not adequately protect the public from further offenses. On appel-

lant's motion for reconsideration, the court responded with a ten-page entry, detailing the statutory factors considered and the conclusion reached.

 Appellant devotes a considerable amount of his argument to an unfulfilled plea agreement wherein the state agreed to recommend a minimum sentence if appellant would cooperate in the investigation and prove his truthfulness by "passing" a polygraph examination. Appellant insists that, although several of his test answers were scored "inconclusive," he substantially complied with the agreement and should receive its benefits.

The trial court held a hearing on this specific issue. An experienced Secret Service polygrapher testified that "inconclusive" results on relevant questions undermine the reliability of the entire test. Therefore, according to the agent, "passing" a polygraph is generally considered scoring "nondeceptive" on all relevant questions. On this evidence, we conclude that it was not unreasonable for the court to refuse to enforce the agreement.

With respect to the sentence of imprisonment itself, the court clearly considered and weighed all the statutory considerations. It concluded that to mete out a minimum sentence to a participant so near the center of an international credit card fraud syndicate would demean the seriousness of the offense. Given the massive scope of this criminal conspiracy, we cannot say that this conclusion was arbitrary, unconscionable, or even unreasonable.

In greater contest is the court's decision to levy a $5.1 million statutory fine against appellant. It is to this issue that appellant writes at length, and it is the focus of both briefs *amicus curiae.*

Appellant maintains that for Ohio to premise his fine on the entire $1.7 million attributable to the whole enterprise, in effect, punishes him for harm caused in "Wisconsin, Indiana, or any of the other states * * * affected by the criminal conduct." Appellant suggests that, in the likelihood that these other states prosecute him, it is probable that he will receive multiple punishment for the same crime.

This is a matter of first impression in Ohio.

 R.C. 2923.32, Ohio's little RICO statute, provides the following with respect to the imposition of financial penalties:

"[B](2) Notwithstanding the financial sanctions authorized by section 2929.18 [3] of the Revised Code, the court may do all of the following with respect to any person who derives pecuniary value or causes property damage, personal injury

---

**3.** R.C. 2929.18 is the general financial sanction provision, which caps fines paid to the state or its subdivisions at $20,000 for a first-degree felony.

other than pain and suffering, or other loss through or by the violation of this section:

"(a) In lieu of the fine authorized by that section, impose a fine not exceeding the greater of three times the gross value gained or three times the gross loss caused and order the clerk of the court to pay the fine into the corrupt activity investigation and prosecution fund created in section 2923.35 of the Revised Code;

"(b) In addition to the fine described in division (B)(2)(a) of this section and the financial sanctions authorized by section 2929.18 of the Revised Code, order the person to pay court costs;

"(c) In addition to the fine described in division (B)(2)(a) of this section and the financial sanctions authorized by section 2929.18 of the Revised Code, order the person to pay to the state, municipal, or county law enforcement agencies that handled the investigation and prosecution the costs of investigation and prosecution that are reasonably incurred.

"The court shall hold a hearing to determine the amount of fine, court costs, and other costs to be imposed under this division." R.C. 2923.32(B)(2).

▉ Initially, we note that R.C. 2923.32(B)(2)(a) does not impose treble damages. The statute raises the cap of the fine that may be imposed from the $20,000 maximum that may be levied against a first-degree felon acting on his own to a more fluid amount premised on either the harm caused or the benefit derived from a pattern of corrupt activity. This is a reasonable provision considering that there is a substantial risk that the damage caused by an ongoing criminal activity or performed in concert with others will be greater than the damage precipitated by an individual. Moreover, this more severe financial penalty provision is in conformity with the parallel purposes of Ohio's RICO statute and the federal RICO statute, see *State v. Schlosser* (1997) 79 Ohio St.3d 329, 332, 681 N.E.2d 911, 913–914, which is to deprive organized crime of its power derived from money gained from criminal activity, *id.,* quoting Organized Crime Control Act of 1970 (84 Stat. 922), Statement of Findings and Purpose, reprinted in 1970 U.S.Code Cong. & Adm. News at 1073. See, also, Ohio's Pattern of Corrupt Activities Law: Ohio Revised Code Sections 2923.31–36 (1991), 17 U.Dayton L.Rev. 279.

There is nothing in the language of R.C. 2923.32 that limits a court's consideration to harm caused only in Ohio. Since one of the principal purposes of this Act is to emasculate the financial vitality of organized criminal activity, we believe that it is in conformity with the Act that a court should consider all the harm caused by an enterprise, no matter where such harm occurred, in considering appropriate financial sanctions.

Consequently, we reject appellant's assertion that the court should not have considered the effects of his criminal activity outside Ohio. Accordingly, appellant's sole assignment of error is not well taken.

Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.

*Judgment affirmed.*

PIETRYKOWSKI and GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.