{¶ 1} This appeal arises from a decision of the Mahoning County Court of Common Pleas denying Appellant Teon Thompson's Crim.R. 32.1 motion to withdraw his guilty plea. Crim.R. 32.1 requires Appellant show that the denial of his postsentence motion to withdraw a plea resulted in a manifest injustice. Appellant has not demonstrated any manifest injustice, and the decision of the trial court is affirmed.
 {¶ 2} On October 8, 1994, George Markovski was robbed at gunpoint in Mill Creek Park in Youngstown, Ohio. Appellant was indicted for the crime and charged with one count of aggravated robbery, which included a gun specification.
 {¶ 3} Attorney Mark Kolmacic was appointed as Appellant's counsel. At some time prior to January 11, 1995, Appellant privately retained Attorney Steve Stanos to represent him. (1/11/95 J.E.)
 {¶ 4} On February 27, 1995, Appellant signed a written plea of guilty to one count of aggravated robbery in violation of R.C. §2911.01(A)(1), a first degree felony, and to a gun specification pursuant to R.C. § 2941.141. Appellant also signed a Journal Entry of Stipulation of Use of Polygraph Test. Appellant agreed to take a polygraph test, and agreed that if he was found to be truthful in denying involvement in the crime against Mr. Markovski, then Appellee would dismiss the charges. Appellant also agreed that if he were found to be untruthful, only the firearm specification would be dismissed and Appellant would be sentenced for the offense of aggravated robbery.
 {¶ 5} A polygraph test was conducted on June 7, 1995, by National Security Consultants, Inc. The test revealed that Appellant's negative answers to the following questions were deceptive:
 {¶ 6} "Were you in the Lester car when the white man was robbed in Millcreek [sic] Park?
 {¶ 7} "Did you have a gun on October 8, 1994?
 {¶ 8} "Did you rob a white man with a gun on October 8, 1994?
 {¶ 9} "Were you in Millcreek [sic] Park on October 8, 1994?
 {¶ 10} "Did you take $3.00 from the white man in Millcreek [sic] Park on October 8, 1994." (6/7/95 Polygraph Results.)
 {¶ 11} On June 28, 1995, the trial court enforced the plea agreement and sentenced Appellant to serve an indefinite term of incarceration of not less than six nor more than twenty-five years. Appellant did not appeal the conviction and sentence.
 {¶ 12} On December 7, 1998, Attorney Paul F. Gambrel filed a motion seeking to withdraw the guilty plea. The motion alleged that Appellant was innocent of the crime, had maintained his innocence throughout the proceedings, and had told his attorneys that a man named Jernell Vernon confessed to the crime. Appellant also alleged that Attorney Stanos represented that a polygraph test is 100% accurate when it is not. Appellant attached three affidavits to the motion: one from Attorney Kolmacic (dated 8/25/97); one from Jernell Vernon (dated 8/16/95); and one from himself.
 {¶ 13} The affidavit of Jernell Vernon identifies Mr. Vernon with a prisoner identification number, but does not indicate where he is incarcerated. In the affidavit, Mr. Vernon confesses to, "the robbery of Mark Markovosky [sic], in Mill Creek Park on High street [sic] in the month of October 1994."
 {¶ 14} The affidavit of Attorney Kolmacic states that he knew about Jernell Vernon, that he heard Jernell Vernon confess to the crime over the phone, that he advised Jernell Vernon relay the information to the police, and that Appellant gave him a picture of Jernell Vernon.
 {¶ 15} The motion to withdraw the guilty plea was heard on July 2, 1999. The parties agree that this was a non-evidentiary hearing. The court denied Appellant's motion to withdraw his guilty plea, giving no explanation. (7/2/99 J.E.) Appellant now challenges this judgment entry on appeal.
 {¶ 16} Appellant's first assignment of error states:
 {¶ 17} "The trial court erred in failing to deny defendant/appellant's motion to withdraw a guilty plea."
 {¶ 18} Appellant argues that the trial court should have allowed him to withdraw his guilty plea based on his allegations that: 1) his attorney misrepresented the accuracy of polygraph tests; and 2) his attorney failed to investigate the defense that Jernell Vernon committed that crime.
 {¶ 19} Appellant correctly states that a trial court's decision to grant or deny a post-sentencing motion to withdraw a guilty plea is reviewed for an abuse of discretion. Appellant filed his motion pursuant to Crim.R. 32.1, which states:
 {¶ 20} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 21} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." State v. Smith (1977), 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324, paragraph two of the syllabus. An abuse of discretion connotes more than an error of law or judgment; instead, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.
 {¶ 22} Furthermore, "[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." Smith, supra, 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324, at paragraph one of the syllabus.
 {¶ 23} The following excerpts from the plea hearing and sentencing hearing are relevant to Appellant's arguments. Appellant stated at his guilty plea hearing:
 {¶ 24} "THE COURT: Do you understand if you don't pass the polygraph examination —
 {¶ 25} "THE DEFENDANT: That's the only way I can clear myself, from my understanding." (2/27/95 Tr., p. 8.)
 {¶ 26} "THE COURT: All right. Let me ask you, do you still want to plead guilty to the charge of aggravated robbery and the firearm specification even though you are giving up these rights?
 {¶ 27} "THE DEFENDANT: The only reason I pled guilty to them is to take the test, that's the only —
 {¶ 28} "THE COURT: I understand what the agreement is.
 {¶ 29} "THE DEFENDANT: Because I understand that if I don't take the test, that the evidence now that they think they got on me, do you know what I mean? Like if they bring down Pochiro, ask him, he just as well be like say he didn't do it.
 {¶ 30} "THE COURT: I understand. If you pass the polygraph examination, I am going to sign the judgment entry you have stipulated through your counsel with the State of Ohio. The stipulation, if I can summarize, is that if you pass the polygraph examination, the charges will be dismissed. If you fail, the firearm specification will be dismissed but you will have to stand before this court for sentencing on the aggravated robbery charge. That's a non-probational charge. So you know what the conditions are, right, Mr. Thompson?
 {¶ 31} "THE DEFENDANT: Yes, sir." (2/27/95 Tr., p. 17.)
 {¶ 32} "THE COURT: You're agreeing that the polygraph was at your client's suggestions?
 {¶ 33} "MR. STANOS: Yes.
 {¶ 34} "THE COURT: And was picked by you and your client?
 {¶ 35} "MR. STANOS: Yes.
 {¶ 36} "THE COURT: And that he failed — I'm looking at the report — one, two, three, four, five crucial questions, that he was found to be deceptive on all five questions. Can we agree on that?
 {¶ 37} "MR. STANOS: That's the report that was submitted.
 {¶ 38} "THE COURT: According to the report?
 {¶ 39} "MR. STANOS: Yeah." (6/28/1995 Tr., p. 4.)
 {¶ 40} Appellant cannot now use Jernell Vernon's confession to the crime as a basis to withdraw his plea, because this information was available to Appellant when he entered his guilty plea. Although the written confession is dated August 16, 1995, which is approximately six months after Appellant entered his guilty plea, the confession adds nothing to the information that Appellant had prior to entering his plea. The very brief confession states: "I Jernell Vernon 303-260, confess to the robbery of Mark Markovosky [sic], in Mill Creek Park on High street [sic] in the month of October 1994. Teon Thompson had no involvement whatsoever with the robbery * * *." Appellant concedes that he gave this information to his original appointed counsel well before he entered his guilty plea. When a defendant agrees to enter the guilty plea, he is waiving many constitutional and statutory rights, including the right to have a trial and the right to establish defenses at trial. Crim.R. 11(C); 146 Ohio App.3d 308, 311, 765 N.E.2d 986, Westlake v.Kilbane, (Ohio App. 8 Dist. 2001). The fact that Appellant wanted to assert this defense three and one-half years after he waived the right to present the defense at trial only reveals that Appellant has had a change of heart about entering the guilty plea. A defendant's mere change of heart about a guilty plea is not grounds for sustaining a Crim.R. 32.1 motion to withdraw a plea. State v. Grigsby (1992), 80 Ohio App.3d 291,301, 609 N.E.2d 183; State v. Drake (1991), 73 Ohio App.3d 640, 645,598 N.E.2d 115; State v. Lambros (1988), 44 Ohio App.3d 102, 103,541 N.E.2d 632.
 {¶ 41} The record shows that Appellant waited three and one-half years to file a motion to withdraw his guilty plea. "An undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." Smith, supra, 49 Ohio St.2d 261, 361 N.E.2d 1324, at paragraph three of the syllabus. Three and one-half years is a very long time to wait before filing a motion to withdraw a guilty plea. This factor weighs heavily against granting the motion.
 {¶ 42} With respect to the polygraph test, the record shows that it was Appellant himself who requested to take a polygraph test and that he approved the person who administered the test. Although it is undoubtedly a dangerous practice, Ohio courts have allowed criminal defendants to enter into plea bargain agreements that are conditioned on the outcome of polygraph tests. State v. Scott (1980), 61 Ohio St.2d 155,162, 400 N.E.2d 375; see also State v. Souel (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, syllabus; State v. Nasrallah (2000),139 Ohio App.3d 722, 727, 745 N.E.2d 511; State v. Small (1987),41 Ohio App.3d 252, 253, 535 N.E.2d 352.
 {¶ 43} The record shows that Appellant believed that only a polygraph test, rather than a trial, would achieve the result he desired, namely, a dismissal of the charges. Appellant agreed to condition his plea on the outcome of the polygraph test, and there is no indication that the accuracy of the test was a consideration in his plea.
 {¶ 44} Furthermore, Appellant presents no specific evidence, other than his own unsupported statement, of the accuracy of polygraph tests. Appellant does not allege any specific facts that challenge the accuracy of the polygraph machine used to record his answers about what occurred on October 8, 1994. This is further indication that Appellant's motion to withdraw his guilty plea appears to be nothing more than a change of heart about the terms of his plea agreement, which is not a basis for sustaining a motion to withdraw a guilty plea.
 {¶ 45} Appellant's second and third assignments of error assert:
 {¶ 46} "The trial court erred in failing to conduct an evidentiary hearing to investigate the claims made in defendant/appellant's motion to withdraw his guilty plea."
 {¶ 47} "Defendant/appellant was denied effective assistance of trial counsel."
 {¶ 48} Appellant contends that the trial court should have conducted an evidentiary hearing on his motion to withdraw the guilty plea. Appellant correctly cites the standard of review and the legal principles governing whether or not the court should hold an evidentiary hearing. "When a trial court reviews a motion to withdraw a guilty plea, it decides, based upon the allegations in [the] motion, whether to hold an evidentiary hearing on the motion." State v. Nathan (1995),99 Ohio App.3d 722, 725, 651 N.E.2d 1044. Generally, a hearing on a postsentence motion to withdraw a plea is only, "required if the facts alleged by the defendant and accepted as true would require the court to permit that plea to be withdrawn." Id., citing State v. Hamed (1989),63 Ohio App.3d 5, 7, 577 N.E.2d 1111. The trial court would only be required to withdraw the plea only if Appellant established the existence of a manifest injustice. Smith, supra, 49 Ohio St.2d 261, 3 O.O.3d 402,361 N.E.2d 1324, at paragraph one of the syllabus. Therefore, if the facts alleged by Appellant are accepted as true, and if these facts require a conclusion that a manifest injustice occurred, the trial court should have conducted an evidentiary hearing.
 {¶ 49} The main reason that Appellant argues that he should have had an evidentiary hearing is that he believes he was denied effective assistance of counsel when he entered his guilty plea. A criminal defendant may argue that he did not have effective assistance of counsel as the basis of a motion to withdraw a guilty plea. State v. Xie (1992),62 Ohio St.3d 521, 524, 584 N.E.2d 715.
 {¶ 50} The test for ineffective assistance of counsel was established in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. See also State v. Holloway (1988), 38 Ohio St.3d 239,244, 527 N.E.2d 831. First, the defendant must show that counsel's performance was deficient. Strickland, 466 U.S. at 687, 104 S.Ct. 2052,80 L.Ed.2d 674. Second, the defendant must show that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial. Id.
 {¶ 51} When dealing with ineffective assistance of counsel leading to a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. Xie, supra, 62 Ohio St.3d at 524, 584 N.E.2d 715, quoting Hillv. Lockhart (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203.
 {¶ 52} Appellant cites two aspects of counsel's representation that were deficient. The first aspect of counsel's representation that Appellant takes issue with is counsel's alleged statement that polygraph tests are 100% accurate. Assuming that counsel did make this statement, it does not prove ineffective assistance of counsel. Appellant would also have to prove that polygraph tests are significantly less than 100% accurate in order to show that his counsel was in error. Appellant does not allege any evidentiary basis, other than his own conclusory opinions, to establish the accuracy or inaccuracy of polygraph tests. Furthermore, Appellant does not allege any specific facts that challenge the accuracy of the polygraph machine used to record his answers about what occurred on October 8, 1994. His mere assertion that he was innocent (and therefore, that the polygraph test must be inaccurate) adds nothing new to the case. Appellant had already declared his innocence to the trial court when he entered his guilty plea and at sentencing. (2/27/95 Tr., pp. 5, 16-17; 6/28/95 Tr., p. 5.) There would be no need for an evidentiary hearing simply to give Appellant a chance to repeat what he stated in two previous hearings.
 {¶ 53} In addition, the facts alleged by Appellant do not support the conclusion that he relied on counsel's advice concerning the accuracy of the polygraph test. The record shows that Appellant believed he would be convicted if the case went to trial. Appellant believed that a polygraph test was his only hope in preventing a conviction for aggravated burglary. If the polygraph test was his only hope, it was his only hope whether it was 100% accurate, or 90% accurate, or 50% accurate. It appears that Appellant would have taken the polygraph test regardless of its accuracy.
 {¶ 54} The second aspect of counsel's representation challenged by Appellant is the alleged refusal of counsel to pursue the defense of innocence and to prove that Jernell Vernon committed the crime. Once again, even if we assume that this is true, it does not necessarily show ineffective assistance of counsel. A decision to enter into a plea agreement rather than proceed to trial is usually treated as a trial tactic. State v. Bird (1998), 81 Ohio St.3d 582, 585, 692 N.E.2d 1013. A defendant may plead guilty even though he is innocent in order to avoid the risks of trial. State v. Gales (1999), 131 Ohio App.3d 56, 60,721 N.E.2d 497. The defendant's actual innocence is simply one factor in determining the best tactic to use at trial. "Of course, many trial tactics may be questioned after an unfavorable result. A fair assessment of attorney performance requires us to eliminate the distorting effect of hindsight." State v. Post (1987), 32 Ohio St.3d 380, 388, 513 N.E.2d 754.
 {¶ 55} It appears that the facts alleged by Appellant do not require a conclusion that he received ineffective assistance of counsel, and in turn, the trial court would not have been required to find that a manifest injustice occurred. Therefore, the trial court was not required to hold an evidentiary hearing. For these reasons, Appellant's second assignment of error is overruled.
 {¶ 56} Appellant's third assignment of error simply repeats part of the argument made in his second assignment. The record does not support that counsel was ineffective for recommending the trial tactic of entering into a plea agreement rather than defending Appellant's innocence at trial.
 {¶ 57} Appellant's three assignments of error are thus overruled. We hereby affirm the decision of the trial court in full.
Judgment affirmed.
Donofrio and Vukovich, JJ., concur.