JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Joan Hall ("defendant"), appeals her convictions for various theft-related offenses stemming from an ongoing retail merchandise refund scheme. After reviewing the facts of the case and pertinent law, we affirm in part and reverse and remand in part.
 {¶ 2} Between 1990 and 2005, defendant, her daughter, Lisa, and her live-in boyfriend, Roger Neff, allegedly engaged in a pattern of corrupt activity, including a retail refund scheme and welfare fraud. Further facts of the case will be discussed as they relate to defendant's assignments of error.
 {¶ 3} On January 19, 2006, defendant was charged as follows: Count 1, engaging in a pattern of corrupt activity in violation of R.C. 2923.32; Counts 2 through 4, tampering with records in violation of R.C. 2913.42; Count 7, possessing criminal tools in violation of R.C. 2923.24; Counts 8 and 15, theft in violation of R.C. 2913.02; Counts 10 through 13 and 16 through 26, tampering with records in violation of R.C. 2913.42; Count 14, illegal use of food stamps in violation of R.C. 2913.46(C)(1); Counts 27 through 78, forgery in violation of R.C. 2913.31; and Count 79, money laundering in violation of R.C. 1315.55.
 {¶ 4} The case was tried to the court beginning on March 15, 2007. On May 8, 2007, the court found defendant guilty of all counts and subsequently sentenced her to an aggregate of seven years in prison. Additionally, the court imposed the following financial sanctions: Restitution under R.C. 2929.18(A)(1), $258,941.34; Prosecution costs under R.C. 2923.32(B)(2), $179,039.27; Fines under R.C. 2923.32(B), $776,824.02; Fines under R.C. 2929.18, $355,000. *Page 4 
 {¶ 5} Defendant now appeals, raising six assignments of error for our review.
 {¶ 6} "I. R.C. 2913.46(C)(1) applies to organization's and employee's acts committed within the scope of employment. Joan Hall's illegal use of food stamps was based on applications in her name and for personal use unrelated to any employment. The trial court erred by finding Ms. Hall guilty under R.C. 2913.46(C)(1) in the absence of sufficient evidence."
 {¶ 7} In the instant case, Count 14 of the indictment against defendant is labeled as a violation of R.C. 2913.46(C)(1), which makes it illegal for an organization to sell, transfer, or trade food stamps. However, the language in the indictment mirrors R.C. 2913.46(B), which states that "[n]o individual shall knowingly possess, buy, sell, use, alter, accept, or transfer food stamp coupons, WIC program benefits, or any electronically transferred benefit in any manner not authorized by the `Food Stamp Act of 1977,' 91 Stat. 958, 7 U.S.C.A. 2001, as amended, or section 17 of the `Child Nutrition Act of 1966,' 80 Stat. 885,42 U.S.C.A. 1786, as amended."
 {¶ 8} Defendant first argues that there was no evidence that she acted on behalf of an organization pursuant to subsection (C)(1) of R.C. 2913.46. Defendant is correct. However, the State argues that there was a typographical error in the indictment and that the case proceeded under a theory that defendant violated subsection (B) of the statute, which covers individuals rather than organizations.
 {¶ 9} "An indictment meets constitutional requirements if it `first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction *Page 5 
in bar of future prosecutions for the same offense.'" State v.Childs, 88 Ohio St.3d 558, 565, 2000-Ohio-425. Additionally, Crim. R. 33(E)(1) states that it is not error for there to be an "inaccuracy or imperfection in the indictment *** provided that the charge is sufficient to fairly and reasonably inform the defendant of all the essential elements of the charge against him."
 {¶ 10} Defendant next argues that there was insufficient evidence to sustain a conviction of welfare fraud. When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259.
 {¶ 11} According to the record, there is sufficient evidence that defendant accepted and possessed $16,249 worth of food stamps that she was not entitled to. Brian Semethy, an investigator for the Cuyahoga County Department of Employment and Family Services, testified that defendant received food stamp benefits from May 1, 1995 through December 27, 2005 in the amount of $16,249. Additionally, Semethy testified that defendant lied on her applications, stating that she did not have any assets, such as cash, credit cards, or a house. However, the record shows that during this time frame, she owned a home in Westlake, had multiple credit and debit cards, and had over $1 million in cash in safety deposit boxes.
 {¶ 12} Finding that there was sufficient evidence to show that defendant committed welfare fraud, her first assignment of error is overruled. *Page 6 
 {¶ 13} "II. A charge of theft of between $100,000 and $500,000 under R.C. 2913.02 requires proof of the amount stolen. By failing to address the specific amount stolen, the State failed to prove theft of between $100,000 and $500,000 beyond a reasonable doubt. Consequently, the trial court violated Ms. Hall's right to due process under the Ohio and United States Constitutions when it convicted Ms. Hall in the absence of sufficient evidence of the amount of the theft."
 {¶ 14} Defendant first argues that there was insufficient evidence as to the specific amount of money each retailer lost, thus the court erred by convicting her of aggravated theft of an amount between $100,000 and less than $500,000, which is a third-degree felony pursuant to R.C. 2913.02(B)(2).
 {¶ 15} A review of the record shows that Derrick Carlson, a regional investigations manager for loss prevention at TJX, which is the parent company of TJ Maxx and Marshalls stores, testified that the total amount of transactions between 1998 and 2005 on credit or debit cards in the three defendants' names was $184,524.65. Keith Thompson, a manager of investigations at Sears, testified that in that same time period, the defendant's receipts at Sears totaled $19,865.44. This consisted of 43 returns, 17 exchanges, and 5 sales. The above samplings are just two examples of the 54 witnesses who testified in this case. Additionally, between 1998 and 2005, the defendants charged $61,310.33 to credit and debit cards; had $313,781.51 in credits to those accounts; and took out cash withdrawals of $245,225.42. *Page 7 
 {¶ 16} According to the court's August 16, 2007 judgment entry determining restitution, which will be analyzed in more detail under defendant's third assignment of error, the State proved beyond a reasonable doubt that defendant stole $258,941.34 from the following entities: TJX Corporation, Sears, Saks Fifth Avenue, J.C. Penney, and the Ohio Department of Human Services (food stamps and Medicaid).
 {¶ 17} Looking at this evidence in a light most favorable to the State, the court could have found that theft of over $100,000 occurred in the instant case.
 {¶ 18} Defendant next argues that there was not sufficient evidence that the court had proper jurisdiction to convict her of thefts that occurred outside the state of Ohio.
 {¶ 19} R.C. 2901.11(A) states in pertinent part that "[a] person is subject to criminal prosecution and punishment in this state *** [when] (1) The person commits an offense under the laws of this state, any element of which takes place in this state *** [and] (5) While out of this state, the person unlawfully takes or retains property and subsequently brings any of the unlawfully taken or retained property into this state." Additionally, R.C. 2901.11(D) states that "[w]hen an offense is committed under the laws of this state, and it appears beyond a reasonable doubt that the offense or any element of the offense took place either in this state or in another jurisdiction or jurisdictions, but it cannot reasonably be determined in which it took place, the offense or element is conclusively presumed to have taken place in this state for purposes of this section." Pursuant to R.C. 2901.11(G), Ohio's criminal *Page 8 
jurisdiction statute "shall be liberally construed, consistent with constitutional limitations, to allow this state the broadest possible jurisdiction over offenses and persons committing offenses in, or affecting, this state."
 {¶ 20} In the instant case, testimony from the various retailers indicates that much of defendant's criminal conduct occurred in the state of Ohio. Additionally, defendant and Neff resided in Westlake, which is located in Cuyahoga County. Carlson, the investigator for TJX, testified that he reviewed TJ Maxx and Marshalls merchandise that was recovered from defendant's home, much of it still with price tickets attached, and valued this merchandise at $174,978.05. Additionally, over $1 million in cash and countless pieces of jewelry were found in safety deposit boxes rented out in defendant's name at various banks in the Cleveland area.
 {¶ 21} Given these facts, there was sufficient evidence to show that a large part of this retail fraud scheme took place in Ohio. See State v.Ahmed, Cuyahoga App. No. 84220, 2005-Ohio-2999 (holding that "a grand jury of one county has authority to indict on offenses occurring in other counties provided that those offenses are part of a course of criminal conduct").
 {¶ 22} Assignment of Error II is overruled.
 {¶ 23} "III. Restitution is only valid when it is statutorily authorized. Between July 1, 1996 and March 23, 2000, R.C. 2929.18(A) limited restitution to `economic loss,' which was defined in terms of `criminally injurious conduct,' which was itself defined as conduct that `imposes a substantial threat of personal injury or death.' *Page 9 
Since Ms. Hall's conduct did not impose a threat of personal injury or death, the trial court erred by ordering restitution for her offenses during that period."
 {¶ 24} As support for her argument that the court erred by ordering restitution for non-violent offenses that occurred before the 2000 amendments to R.C. 2929.18, defendant cites, inter alia, State v.Ward (1999), 135 Ohio App.3d 76, 80-81, which states:
 {¶ 25} "A sentencing court's authority to order restitution is governed by R.C. 2929.18, which states in part as follows: `Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following: (1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss.' The Ohio Revised Code defines `economic loss' as `any economic detriment suffered by a victim as a result of criminally injurious conduct and includes *** any property loss, medical costs, or funeral expense incurred as a result ofthe criminally injurious conduct.' R.C. 2929.01(N). We must then turn to R.C. 2929.01(G), which provides as follows: "`Criminally injurious conduct" means any conduct of the type that is described in division (C)(1) or (2) of section 2743.51 of the Revised Code and that occurs on or after July 1, 1996 ***.' Finally, R.C. 2743.51 defines `criminally injurious conduct' as `any conduct that *** poses a substantial threat of personal injury or death ***.'
 {¶ 26} "When read together, these statutes provide that restitution is a valid sanction only to compensate for crimes that pose the threat of personal injury or death." (Internal notes omitted.) *Page 10 
 {¶ 27} See, also, State v. Quandt, Cuyahoga App. No. 80222, 2002-Ohio-4903 (holding that restitution before the 2000 amendments to R.C. 2929.18 was not a "statutorily valid sanction" for a theft offense).
 {¶ 28} The State, on the other hand, argues that the legislative intent behind R.C. 2929.18 shows that courts could order restitution for non-violent crimes. As support for this argument, the State notes that the legislature modified the definition of "economic loss" to include "economic detriment suffered as a result of the commission of a felony." See Senate Bill 107, effective March 23, 2000. See, also, State v.Bonanno, Allen App. No. 1-02-21, 2002-Ohio-4005 (holding that "sentencing courts `are not limited to' imposing financial sanctions only in the situations listed in the [pre-March 23, 2000 amendments to R.C. 2929.18]").
 {¶ 29} We also note that defense counsel did not object to this alleged error during trial. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.
 {¶ 30} In the instant case, defendant was convicted of multiple counts of theft-related offenses, including engaging in a pattern of corrupt activity, which occurred over a 15-year span. As a result of the convictions, the court ordered $258,941.34 in restitution, with a break-down corresponding to the victims. No objection was made by defendant to further break down this total by date. Due to the ongoing nature of *Page 11 
defendant's criminal scheme, we find this case distinguishable fromWard and Quandt, supra.
 {¶ 31} Assignment of Error III is overruled.
 {¶ 32} "IV. The amount of restitution awarded by the trial court is not supported by the record. By imposing that restitution without a sufficient factual basis, the court violated Ms. Hall's rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article 1 of the Ohio Constitution."
 {¶ 33} Pursuant to R.C. 2929.18(A)(1), a court imposing a sentence upon an offender for a felony may also impose "[r]estitution by the offender to the victim of the offender's crime *** in an amount based on the victim's economic loss."
 {¶ 34} We review court-ordered restitution for an abuse of discretion. "To establish the amount of restitution within a reasonable certainty, there must be some competent, credible evidence. Sufficient evidence of the amount of restitution may appear in the record. Where evidence of the appropriate amount of restitution does not appear in the record, an evidentiary hearing is required." State v. Carrino (May 11, 1995), Cuyahoga App. No. 67696, citing State v. Warner (1990),55 Ohio St.3d 31, 69.
 {¶ 35} In the instant case, due to the length of time the indictment covered (15 years), the sheer amount of transactions in question, and the multiple ways in which defendant perpetrated her "refunding," it was difficult to ascertain a hard and fast dollar amount during the trial. As such, the court held a restitution hearing, at which *Page 12 
Carlson of TJX testified and was subject to cross-examination, as to specific details of economic losses for TJ Maxx and Marshalls, which he totaled at $158,468. At the close of this hearing, the court stated the following regarding restitution:
 {¶ 36} "It has been quite an undertaking in the view of the Court here because in a very frustrated manner I mentioned it was kind of a moving target. I have taken, after great thought, I have taken Exhibit No. 10. I believe it is in addition to some of the other exhibits in the trial and the record will go to the Court of Appeals in the event there is an appeal, but feel that the record supports the restitution pursuant to 2929.18(A)(1) as follows. This will apply to Joan as she has been found guilty of the theft and the other activities.
 {¶ 37} "For TJ Maxx I have found restitution in the amount of $159,322.28. This is after working with the numbers at great time and expense to the Court I might add. The Court will also at the request of this particular victim, there is a storage locker which I know for a fact is being used as I have with counsel have seen that locker to the tune of $5,376. The Court will award that as a component of the restitution and also $2,156.04 for truck rental. The rest of the request will be denied.
 {¶ 38} "Sears after crunching the numbers, the Court finds restitution in an amount of $17,449.27. For Saks restitution, which is supported in the record, of $5,074.40. J.C. Penney, $34,679 and $34,679.11, and the Ohio Department of Human Services for the food stamps, $16,249 and for the Medicaid benefits, $18,635.24. Restitution totals $258,941.34." *Page 13 
 {¶ 39} A review of the record shows these various amounts are supported by competent, credible evidence in the form of trial testimony, volumes of receipts and credit and debit card statements, and State's Exhibit 10, which consists of summary sheets for defendant's accounts, as well as pie charts and graphs.
 {¶ 40} Assignment of Error IV is overruled.
 {¶ 41} "V. Courts have authority to order fines only as empowered by statute. RICO violations under R.C. 2923.32(B)(2)(a) authorize fines of three times the gross value gained through corrupt activity in lieu of the statutorily authorized fine under R.C. 2929.18. The trial court erred by imposing fines under both R.C. 2929.32(B)(2)(a) and R.C. 2929.18."
 {¶ 42} Defendant specifically argues that the trial court should vacate the $20,000 fine it ordered on Count 1, pursuant to R.C. 2929.18(A)(2), because the court trebled the restitution under R.C. 2923.32(B)(2)(a), which allegedly allows treble fines only in lieu of R.C. 2929.18 fines.
 {¶ 43} R.C. 2923.32(B)(2) reads as follows:
 {¶ 44} "Notwithstanding the financial sanctions authorized by section 2929.18 of the Revised Code, the court may ***
 {¶ 45} "(a) In lieu of the fine authorized by that section, impose a fine not exceeding the greater of three times the gross value gained or three times the gross loss caused ***; *Page 14 
 {¶ 46} "(b) In addition to the fine described in division (B)(2)(a) of this section and the financial sanctions authorized by section 2929.18
of the Revised Code, order the person to pay court costs;
 {¶ 47} "(c) In addition to the fine described in division (B)(2)(a) of this section and the financial sanctions authorized by section 2929.18
of the Revised Code, order the person to pay *** the costs of investigation and prosecution ***."
 {¶ 48} In State v. Nasrallah (2000), 139 Ohio App.3d 722, 728, the Sixth District analyzed R.C. 2923.32(B)(2)(a), and we find their analysis helpful:
 {¶ 49} "The statute raises the cap of the fine which may be imposed from the $20,000 maximum which may be levied against a first degree felon acting on his own, to a more fluid amount premised on either the harm caused or the benefit derived from a pattern of corrupt activity. This is a reasonable provision considering that there is a substantial risk that the damage caused by an ongoing criminal activity or performed in concert with others will be greater than the damage precipitated by an individual. Moreover, this more severe financial penalty provision is in conformity with the parallel purposes of Ohio's act and the federal RICO statute, see State v. Schlosser (1997), 79 Ohio St.3d 329, 332,681 N.E.2d 911, which is to deprive organized crime of its power derived from money gained from criminal activity. Id., quoting Organized Crime Control Act of 1970, Statement of Findings and Purposes, 84 Stat 922. See, also, Ohio's Pattern of Corrupt Activities Law: O.R.C. § 2923.31-36 (1991), 17 U.Dayton L.Rev. 279." *Page 15 
 {¶ 50} See, also, State v. Burge (1992), 82 Ohio App.3d 244 (holding that under R.C. 2923.32(B)(2), the court is empowered to impose a fine not to exceed three times the economic value gained or loss caused).
 {¶ 51} This Court has held that "[w]ords used in a statute are to be taken in their usual, normal, and customary meaning. Further, unless a statute is ambiguous, the court must give effect to the plain meaning of a statute." City of Cleveland Heights v. Jones, Cuyahoga App. No. 86313,2006-Ohio-454.
 {¶ 52} In the instant case, the court imposed a $20,000 fine for defendant's violation of R.C. 2923.32 and tripled the restitution for an additional $776,824.02 fine under R.C. 2923.32. Defense counsel did not object to the $20,000 fine; as such, we review this argument under a plain error standard. To reverse on plain error, the party must establish that the outcome "would clearly have been different but for the trial court's allegedly improper actions." State v. Waddell,75 Ohio St.3d 163, 166, 1996-Ohio-100.
 {¶ 53} A plain reading of R.C. 2923.32(B)(2) shows that subsection (a) is to be applied in the alternative of conventional fines under R.C. 2929.18. See Black's Law Dictionary (7th Ed.) 791 (defining "in lieu of" as "[i]nstead of or in place of"). Accordingly, we hold that the court erred in imposing a $20,000 fine for Count 1 under R.C. 2929.18(A) in addition to the treble fines of $776,824.02.
 {¶ 54} Assignment of Error V is sustained for the limited purpose of reducing the conventional R.C. 2929.18(A)(2) fines from $355,000 to $335,000. *Page 16 
 {¶ 55} "VI. Courts are authorized to order fines under R.C. 2929.18(A). Fines in excess of the statutory maximum are illegal, and a court lacks jurisdiction to impose them. The trial court committed plain error by imposing fines in excess of the conventional maximum fines allowed under R.C. 2929.18(A)(3)."
 {¶ 56} In the instant case, defendant did not object to the statutory fines at sentencing; therefore, we review this argument for plain error. At the sentencing hearing, the court ordered fines under R.C. 2929.18, which totaled $254,500, as follows: Count 1, $20,000; Counts 2, 3, and 4, $10,000 each (subtotal $30,000); Counts 7, 27-46, 48-56, 58-76, $500 each (subtotal $24,500); Count 8, $10,000; Counts 10, 11-13, $10,000 each (subtotal $40,000); Counts 14 and 15, $10,000 each (subtotal $20,000); Counts 16-26, $10,000 each (subtotal $110,000); Count 79, $10,000.
 {¶ 57} In the court's August 16, 2007 judgment entry, Counts 7, 27-46, 48-56, and 58-76 are listed as $2,500 each, rather than $500 each. In addition, the journal entry shows a $2,500 fine for counts 77 and 78, which were not mentioned at all during the hearing. Finally, the journal entry lists no fines for counts 16-26. The entry totals the R.C. 2929.18
fines at $355,000, which differs from the fines the court imposed on the record at the hearing. "Journal entries must conform to the record at the sentencing hearing and must be corrected to reflect that which was stated at the sentencing hearing itself." State v. Lynch, Cuyahoga App. No. 90630, 2008-Ohio-5594. *Page 17 
 {¶ 58} Assignment of Error VI is sustained and the cause is remanded for the limited purpose of correcting the journal entry.
 {¶ 59} Judgment affirmed as to convictions and restitution; reversed and remanded as to the calculation of fines.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for further proceedings.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and JAMES D. SWEENEY, J.*, CONCUR.
* SITTING BY ASSIGNMENT: JUDGE JAMES D. SWEENEY, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS. *Page 1